## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**REBECCA ORNELAS,**

        **Plaintiff,**

**v.**                                            **No. CIV-13-0502 LAM**

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

        **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

        **THIS MATTER** is before the Court on Plaintiff's ***Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*** *(Doc. 18)*, filed October 21, 2013.   In accordance with  28 U.S.C.  § 636(c)(1)  and  Fed. R. Civ. P. 73(b),  the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case.   *See* [*Docs. 20* and *21*].   On December 20, 2013, Defendant filed a response to the motion [*Doc. 22*], and, on December 27, 2013, Plaintiff filed a notice of completion of briefing [*Doc. 24*].   The Court has considered Plaintiff's motion, Defendant's response, and the relevant law.   Additionally, the Court has meticulously reviewed and considered the entire administrative record.   [*Doc. 15*].   For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

# I.   Procedural History

On April 30, 2010, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), respectively, alleging that she became disabled on January 15, 2005.   [*Doc. 15-8* at 2-8 and 9-12, respectively].   Plaintiff stated that she became disabled due to: ADD, depression, arthritis, obesity, anemia, learning disability, and anxiety.   [*Doc. 15-9* at 3].   The respective applications were denied at the initial level on September 17, 2010 (*Doc. 15-6* at 2-5 and 6-9), and at the reconsideration level on January 3, 2011 (*id.* at 14-16 and 17-20).   Pursuant to Plaintiff's request (*id.* at 21-22), Administrative Law Judge Ben Willner (hereinafter "ALJ") conducted a hearing on February 22, 2012.   [*Doc. 15-4* at 2-50]. At the hearing, Plaintiff was present, was represented by counsel and testified.   *Id.* at 4 and 6-40. A Vocational Expert (hereinafter "VE"), Tom Griner, was also present and testified.   *Id.* at 4 and 40-49.   Also at the hearing, Plaintiff amended her alleged disability onset date to May 26, 2005.   *Id.* at 7.

On April 9, 2012, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.   [*Doc. 15-3* at 16-32].   Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 10-12), and, on March 23, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 6-8), which made the ALJ's decision the final decision of the Commissioner.   On May 30, 2013, Plaintiff filed her complaint in this case. [*Doc. 1*].

# II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).   An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).   While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."   *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."   *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).   In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.   20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."    20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on May 17, 1965.   [*Doc. 15-8* at 2].   Plaintiff has held the following jobs: cashier, data transcriber, mail carrier, and banquet server.   [*Doc. 15-9* at 5].   Plaintiff alleges that she is unable to work because of: ADD, depression, arthritis, obesity, anemia, learning

disability, and anxiety.   *Id.* at 3.   Plaintiff's medical records include: a Psychological/Vocational Evaluation by Clifford O. Morgan, Ph.D., dated August 18, 2004 (*Doc. 15-11* at 4-11); an assessment by Anne Ortiz, M.D., dated June 21, 2010 (*Doc. 15-14* at 27-30); a Consultative Examination by Sylvia M. Ramos, M.D., dated September 2, 2010 (*Doc. 15-15* at 36-39); a Psychiatric Review Technique by Elizabeth Chiang, M.D., dated September 5, 2010 (*id.* at 41-54); a Physical Residual Functional Capacity Assessment by Janice Kando, M.D., dated September 16, 2010 (*Doc. 15-17* at 35-42); two Case Analyses, one by Allen Gelinas, M.D., dated December 2, 2010 (*Doc. 15-18* at 31) and one by Charles F. Bridges, Ph.D., dated December 28, 2010 (*id.* at 32); and a Psychological Testing Consultation by Donald P. Flammer, Ph.D., dated March 22, 2004 (*id.* at 38-41).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's amended alleged disability onset date of May 26, 2005.   [*Doc. 15-3* at 21].   At step two, the ALJ found that Plaintiff has the following severe medically determinable impairments: "osteoarthritis of the bilateral knees status post bilateral total knee replacements; osteoarthritis of the lumbar spine; hypertension, heart murmur, and obesity."   *Id.*   At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).   *Id.* at 26.

Before step four, the ALJ determined that Plaintiff has the RFC to perform sedentary work, except Plaintiff: "can only occasionally balance, stoop, kneel, crouch, and climb stairs and ramps;"

"cannot crawl or climb ladders, ropes, and scaffolds;" "must avoid concentrated exposure to extreme cold temperatures, humidity, and vibrations;" and "must avoid hazards, such [as] dangerous machinery and heights." *Id.* at 27. The ALJ further found that Plaintiff "requires occasional breaks and must use a cane at all times." *Id.* In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, and [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are credible to the extent that they are consistent with the [ALJ's RFC] assessment." *Id.* at 28. The ALJ gave limited weight to the opinion of consultative examiner, Dr. Ramos, regarding Plaintiff's abilities to sit, stand, walk, lift, carry, and handle small objects. *Id.* at 31. The ALJ gave significant weight to the opinion of Plaintiff's treating physician, Dr. Epstein, regarding Plaintiff's abilities to walk and stand, and also gave significant weight to the opinions of the state agency physicians regarding Plaintiff's physical functioning. *Id.* At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a billing clerk and a data entry clerk. *Id.* at 32. The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.   Analysis

Plaintiff makes the following arguments in her motion to reverse or remand: (1) that the ALJ erred at step two in failing to find that Plaintiff's mental health impairments are severe (*Doc. 18* at 3-12); and (2) that the ALJ erred at step four by failing to consider all of Plaintiff's impairments in his RFC determination, and by failing to state his RFC finding with specificity (*id.* at 12-15). In response, Defendant contends that the ALJ properly determined Plaintiff's

impairments at step two, and that the ALJ properly considered the effects of Plaintiff's mental impairments at step four.   [*Doc. 22* at 4-13].

## A.   The ALJ's Step Two Finding

An impairment should be found to be severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."   20 C.F.R. §§ 404.1520(c), 416.920(c). When determining whether a claimant has a mental disorder, an ALJ must follow a two-step procedure: (1) evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether he or she has a medically determinable mental impairment; and (2) evaluate the impact of that mental impairment on the claimant's ability to function.   *Grogan*, 399 F.3d at 1264 (citation omitted).   In making his or her decision, the ALJ must discuss "the evidence supporting his decision, . . . [as well as] the uncontroverted evidence he chooses not to rely upon . . . [and] significantly probative evidence he rejects."   *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citations omitted).

Here, the ALJ found that Plaintiff's medically determinable mental impairments "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."   [*Doc. 15-3* at 23].   In making this decision, the ALJ noted the testing and diagnoses of Dr. Flammer and Dr. Morgan regarding Plaintiff's mental functioning. *Id.*   The ALJ further noted that Plaintiff was able to perform work tasks for several semi-skilled occupations despite these diagnoses, and that there is no evidence that Plaintiff required special accommodations while performing her job as a data entry clerk.   *Id.*   The ALJ stated that Plaintiff completed an associate's degree and was taking classes towards a bachelor's degree at the time of

the hearing.   *Id.*   The ALJ found that Plaintiff has "no mental impairment that causes more than mild limitations in activities of daily living, social functioning, or concentration, persistence or pace," and stated that he was relying on evidence that Plaintiff is able to clean, shop, cook, drive, and perform personal grooming and hygiene, and that Plaintiff cares for her teenage son, who she reports is also disabled.   *Id.* at 24.   The ALJ also found that Plaintiff could interact independently and appropriately with other people, sustain focused attention, and work at a consistent pace, and that Plaintiff had not had any documented episodes of decompensation.   *Id.*   The ALJ stated that his finding that Plaintiff does not have a severe mental impairment is supported by the Psychiatric Review Technique performed by the state agency consultant, and gave limited weight to Dr. Morgan's opinion and significant weight to the opinion of consultative examiner, Dr. Ortiz.   *Id.* at 24-25.   Finally, the ALJ stated that he was not persuaded by the opinion of mental health counselor Mary Snyder.   *Id.* at 25-26.

Plaintiff contends that the ALJ erred at step two by failing to find that Plaintiff's mental impairments, specifically her diagnoses of verbal learning disability, ADHD, adjustment disorder, mood disorder, generalized anxiety disorder, and posttraumatic stress disorder, are severe. [*Doc. 18* at 3].   Plaintiff contends that she has met her burden at this step by providing objective evidence that these disabilities and disorders limit her ability to do basic work activities.   *Id.* at 4. Specifically, Plaintiff contends that the ALJ erred by: (1) improperly dismissing the opinions of Drs. Flammer and Morgan based on Plaintiff's work history and education (*id.* at 8-10); (2) improperly evaluating the opinion of Dr. Flammer (*id.* at 10-11); (3) improperly evaluating the

opinion of Dr. Ortiz (*id.* at 11); and (4) improperly evaluating the opinion of mental health counselor Mary Chris Snyder (*id.* at 11-12).

### 1.  *The ALJ's Evaluation of Plaintiff's Work and Education*

Plaintiff first contends that the ALJ erred by discrediting the findings and diagnoses of Drs. Flammer and Morgan based on Plaintiff's work history, the fact that Plaintiff has earned an associate's degree, and the fact that Plaintiff was working towards a bachelor's degree.   [*Doc. 18* at 8-9].   Plaintiff contends that the ALJ failed to mention that Plaintiff's former employer noted that Plaintiff had difficulties with inputting information correctly and was easily distracted, and also failed to note that Plaintiff took four years to obtain her associate's degree and that she was receiving special services in school.   *Id.* at 9-10.   Plaintiff also notes that she is attending school in order to maintain her housing requirements.   *Id.* at 10.

The Court finds that the ALJ did not err at step two based on his findings regarding Plaintiff's work and schooling.   The ALJ's finding that Plaintiff's ability to perform work tasks, obtain an associate's degree, and work towards a bachelor's degree, are all supported by evidence in the record.   While Plaintiff disputes the ALJ's findings regarding why she left her job as a data entry clerk, the record shows that Plaintiff's supervisor stated that Plaintiff left of her own accord and was not asked to leave, even though Plaintiff indicated at the hearing that she was asked to leave the job.   *Compare* [*Doc. 15-18* at 43] *with* [*Doc. 15-4* at 13].   Despite this apparent discrepancy in the record, the ALJ discussed both Plaintiff's testimony and her supervisor's statement regarding why Plaintiff left her job, and the Court "may neither reweigh the evidence nor substitute" its opinion for the ALJ's opinion.   *Hamlin*, 365 F.3d at 1214 (citation and

quotation marks omitted).   In addition, the ALJ's reliance on Plaintiff's college-level work for his finding that Plaintiff is capable of semi-skilled through skilled work complies with 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4), which state that a person with a high school education or above is generally considered as someone who "can do semi-skilled through skilled work."   Therefore, the Court finds that the ALJ did not err with regard to his consideration of Plaintiff's work and education at step two.

### 2.   *The ALJ's Evaluation of Dr. Flammer's Opinion*

Next, Plaintiff contends that the ALJ erred in his consideration of the opinions of Dr. Flammer.   [*Doc. 18* at 10-11].   The ALJ noted that Dr. Flammer evaluated Plaintiff on March 22, 2004, and made the following findings: a verbal IQ score of 74, performance IQ score of 83, and a full-scale IQ score of 76; that Plaintiff's intellectual abilities for verbal comprehension were within the borderline range, with a weakness in working memory; and that Plaintiff had a profile consistent with individuals manifesting problems with sustained attentiveness, focus and concentration.   [*Doc. 15-3* at 23] (citing *Doc. 15-18* at 37-41).   The ALJ, however, did not state whether or how this evidence supported his finding of a non-severe mental impairment, or whether he rejected this opinion.   After noting Dr. Flammer's opinions, the ALJ stated: "However, during an evaluation with Clifford O. Morgan, on August 18, 2004, . . . [Plaintiff] stated that she had never received any special education services while in high school, and she was never retained in a grade level."   [*Doc. 15-3* at 23].   The ALJ further stated that Plaintiff worked quickly during Dr. Morgan's evaluation.   *Id.*   While the ALJ may have relied on Dr. Morgan's evaluation of Plaintiff to discredit some of Dr. Flammer's findings, this was not explicitly stated by the ALJ, and

the ALJ fails to state what portions of Dr. Flammer's opinions he may be rejecting.   Moreover, the ALJ fails to mention Dr. Flammer's opinion that Plaintiff's testing "show[s] patterns of deficiency particularly in areas pertaining to language comprehension" (*Doc. 15-18* at 41), even though the ALJ notes that Dr. Morgan's evaluation resulted in IQ scores "that were again suggestive of a verbal learning disability" (*Doc. 15-3* at 23), which appears to support Dr. Flammer's opinion regarding Plaintiff's language comprehension limitations.   *Id.*   The Court, therefore, finds that the ALJ's rejection of portions of Dr. Flammer's opinion without explaining why he did so or providing support from the record for that decision does not comply with the holding in *Clifton*, which requires ALJs to discuss the evidence supporting their decisions as well as evidence they choose not to rely upon.   79 F.3d at 1010, *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

### 3.   The ALJ's Evaluation of Dr. Ortiz' Opinions

Plaintiff next contends that the ALJ erred in giving significant weight to the opinions of state agency consultative examiner Dr. Ortiz.   [*Doc. 18* at 11].   The ALJ stated that he gave Dr. Ortiz' opinions significant weight because they "are consistent with the evidence of [the] record as a whole."   [*Doc. 15-3* at 25] (citing *Doc. 15-14* at 27-30).   The ALJ, however, failed to state what evidence in the record supported Dr. Ortiz' opinions.   "An ALJ is bound by the opinions of agency medical consultants only insofar as they are supported by evidence in the case record."   *Lee v. Barnhart*, No. 03-7025, 117 Fed. Appx. 674, 678, 2004 WL 2810224 (10th Cir. Dec. 8, 2004) (unpublished) (citing SSR 96-6p, 1996 WL 374180, at *2).   "If the ALJ relies

heavily on such opinions, as the ALJ did here, the opinions must themselves find adequate support in the medical evidence." *Lee*, 117 Fed. Appx. at 678. Dr. Ortiz' opinions do not address the opinions of Drs. Flammer and Morgan regarding Plaintiff's mental limitations, and Dr. Ortiz' opinions that Plaintiff has no limitations in her abilities to understand and remember, or in concentration and task persistence, conflict with the opinions of Drs. Flammer and Morgan. *Compare* [*Doc. 15-14* at 30] *with* [*Doc. 15-18* at 38-41] and [*Doc. 15-11* at 8]. The Court, therefore, finds that the ALJ erred in his discussion of Dr. Ortiz opinions and, on remand, the ALJ should provide a more detailed explanation for attributing significant weight to state agency opinions that are contradicted by evidence in the record, in compliance with SSR 96-6p, 1996 WL 374180, at *2 .

#### 4.   *The ALJ's Evaluation of Mary Chris Snyder's Opinion*

Plaintiff next contends that the ALJ did not comply with SSR 06-03p in his evaluation of the opinion of mental health counselor Mary Chris Snyder. [*Doc. 18* at 11-12]. Pursuant to SSR 06-03p, 2006 WL 2329939, at *4, ALJs must consider the following factors, when relevant, in evaluating medical sources who are not "acceptable medical sources:"

(1) How consistent the opinion is with other evidence;

(2) The degree to which the source presents relevant evidence to support an opinion;

(3) How well the source explains the opinion;

(4) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

(5) Any other factors that tend to support or refute the opinion.

While an ALJ must consider these factors, the ALJ need not expressly discuss each of them in the ALJ's opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *5 ("Not every factor for weighing opinion evidence will apply in every case."). However, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258 (citation and internal quotation marks omitted). Here, the ALJ stated that he was not persuaded by Ms. Snyder's opinion that Plaintiff is disabled, because that decision is left to the ALJ (*Doc. 15-3* at 25), and that Ms. Snyder's opinions regarding Plaintiff's difficulties with daily living, social functioning, and concentration, persistence, and pace, are inconsistent with Plaintiff's own statements regarding her abilities, her continuing college education, and her reports of doing well since receiving mental health counseling (*id.* at 26). The Court finds that the ALJ sufficiently supported his decision to discount Ms. Snyder's opinions pursuant to SSR 06-3p by discussing the inconsistencies between the opinion and evidence in the record. Plaintiff's contention that the ALJ's assessment of Ms. Snyder's opinion was incorrect invites the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, which the Court cannot do. *See Hamlin*, 365 F.3d at 1214. The Court, therefore, finds that this contention is without merit.

### B.   Plaintiff's Remaining Claims

In addition to her step-two claims, Plaintiff contends that the ALJ erred at step four in his RFC determination. [*Doc. 18* at 12-15]. Because the Court has found that this case should be remanded so that the Commissioner can reconsider the ALJ's step-two findings, the Court finds

that it is unnecessary to reach Plaintiff's remaining claims because they may be affected by the ALJ's findings on remand.  *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider Plaintiff's mental impairments at step two as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's ***Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*** *(Doc. 18)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*

**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**